HARRY J. REIN vs. TOWN OF MARSHFIELD
(and a companion case[1]).

Plymouth.  May 9, 1983. — August 10, 1983.

Present: HALE, C.J., GRANT, & KASS, JJ.

*Police,* Incapacity, Vacation, Compensation. *Municipal Corporations,*
Police. *Words,* "Compensation," "Pay," "Without loss of pay."

Municipal police officers did not accrue either vacation time or sick time
during periods of incapacity for which they were granted "leave with-
out loss of pay" pursuant to G. L. c. 41, § 111F.  [521-524]

CIVIL ACTIONS commenced in the Superior Court.Depart-
ment on August 24, 1979, and July 28, 1980, respectively.

Motions for partial summary judgment were heard by
*Wagner, J.,* and judgment was ordered by *Ford, J.*

*Robert L. Marzelli,* Town Counsel, for the town of
Marshfield.

*Marc J. Miller* for Harry J. Rein & another.

KASS, J.  Officer Rein of the Marshfield police depart-
ment was injured without fault of his own while on duty in
December, 1977.  He remained incapacitated from this in-
jury and did not work until his retirement on May 23, 1979.

Officer Kittredge, also on the Marshfield force, was in-
jured without fault of his own while on duty November 30,
1977.  He remained incapacitated and did not work until
October 31, 1979, at which time he returned and worked as
a police officer until his retirement in 1981.

Conformably with G. L. c. 41, § 111F,[2] the town paid
each officer his weekly earnings during the period of his

---

[1] Raymond D. Kittredge *vs.* Town of Marshfield.

[2] General Laws c. 41, § 111F, as appearing in St. 1964, c. 149, pro-
vides: "Whenever a police officer or fire fighter of a city, town, or fire

incapacity. Neither, however, was permitted to accrue vacation time or sick time, benefits which would have been available to officers on active duty under their collective bargaining agreement. Upon retirement the town paid each officer for vacation and sick days accumulated while on active duty status which remained unused.[3] No payments were made for the periods during which the plaintiffs were incapacitated and inactive.

The plaintiffs maintained that those payments were due them under G. L. c. 41, § 111F, and under their contract, and requested a declaration of rights pursuant to G. L. c. 231A, § 1.[4] The trial court, which heard the actions

---

or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, . . . he shall be granted leave without loss of pay for the period of such incapacity. . . . All amounts payable under this section shall be paid at the same time and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer or fire fighter."

[3] Payments were made pursuant to a collective bargaining agreement in force between the town and the International Brotherhood of Police Officers, Local 319. Article X, § 12 reads: "Employees who are eligible for vacation under this Article and whose services are terminated by dismissal through no fault or delinquency of their own, by resignation (if two (2) weeks notice has been given previously) or by retirement, or by entrance into the Armed Forces, shall be paid an amount equal to the vacation allowance as earned in the vacation years prior to such dismissal, resignation with notice, retirement or entrance into the Armed Forces but not granted. In addition, payment shall be made for the portion of vacation allowance earned in the vacation year during which such dismissal, resignation with notice, retirement or entrance into the Armed Forces occurred up to the time of the employee's separation from the payroll."

Article XVII, § 5 reads: "Employees whose services have been permanently terminated because of dismissal (other than for just cause), or retirement shall be paid for all accumulated sick leave in a lump sum at the prevailing rate of pay on the date of such termination of services."

[4] Although the collective bargaining agreement contains a grievance and arbitration procedure, resort to arbitration is not jurisdictional. *Tumim* v. *Palefsky,* 7 Mass. App. Ct. 847 (1979). Unlike in *Foley* v. *Northbridge,* 14 Mass. App. Ct. 526 (1982), the agreement was part of the record considered by the trial court, and our decision will resolve the controversy. The town raised no objection to the c. 231A action in the court below; in fact, it specifically admitted jurisdiction of the court. Any right to arbitration under the collective bargaining agreement was waived by

filed by each of the plaintiffs on a consolidated basis, ruled that the town must pay the accrued benefits. The town has appealed.

If there was ever doubt that a town cannot substitute accrued vacation or sick leave for payments due injured police officers under § 111F, it was laid to rest by *Carvalho* v. *Cambridge,* 372 Mass. 464, 465-466 (1977). *Cassidy* v. *Newton,* 386 Mass. 1002 (1982). Less clear is what benefits the town must pay in order to comply with the statute. The injured officer is granted "leave without loss of *pay . . .*," and amounts payable are "deemed to be the *regular compensation*" of the officer (emphasis supplied). When the draft legislation which became § 111F was originally introduced as Senate No. 376 of 1952, the bill provided in pertinent part:

> "[C]ities and towns shall provide *regular compensation* to members of fire and police departments, incapacitated from injuries incurred or illnesses contracted through no fault of their own in the actual performance of duty" (emphasis supplied).

This bill was revised slightly and introduced in the House as House No. 2317 of 1952:

> "Members of a police or fire department who become incapacitated for work from injuries incurred or serious illness contracted through no fault of their own in the actual performance of their duties as policemen or firemen, shall be paid *regular compensation* during the period of such inacpacity . . ." (emphasis supplied).

The bill went through a final metamorphosis and was enacted as St. 1952, c. 419, in form substantially similar to current § 111F:

the parties and cannot now be resurrected. *Tumim* v. *Palefsky, supra. Morales Rivera* v. *Sea Land of Puerto Rico, Inc.,* 418 F.2d 725, 726 (1st Cir. 1969). *Commercial Iron & Metal Co.* v. *Bache Halsey Stuart, Inc.,* 581 F.2d 246, 249 (10th Cir. 1978).

> "Whenever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, he shall be granted leave *without loss of pay* for the period of such incapacity. . . . All amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer or fire fighter." (Emphasis supplied.)

Thus while the earlier two versions of the bill provided that officers on leaves be paid "regular compensation," the final version provided only for "leave without loss of pay." The statutory scheme has been less than consistent in the use of either "pay" or "compensation." Compare G. L. c. 41, §§ 111E, 111H, and c. 147, § 17B, with G. L. c. 41, §§ 111, 111A, 111B, 111C and 111D; see also *Police Commr. of Boston* v. *Ciccolo,* 356 Mass. 555, 558 (1969). But where, as here, the Legislature has preferred to the more inclusive word "compensation" the apparently narrower word "pay" we assume that its choice was made knowledgeably and deliberately. See *Foley* v. *Northbridge,* 14 Mass. App. Ct. 526, 531 (1982). As used in the statute, "[t]he term 'compensation' encompasses both salary and wages," *Jones* v. *Wayland,* 374 Mass. 249, 256 (1978),[5] and the necessary implication is that the terms "compensation" and "pay" or "salary" are not synonymous. Note also that § 111F says that "[a]ll amounts payable under this section . . . shall be deemed to be the regular compensation of such police officer," thus further etching the distinction.

---

[5] We note that "regular compensation" is a defined term in the contributory retirement system for public employees (G. L. c. 32, § 1, as appearing in St. 1979, c. 681), including "salary, wages or other compensation in whatever form," but excluding "bonus, overtime, severance pay for any and all unused sick leave . . . or any other payments made as a result of giving notice of retirement."

Moreover, the interpretation of § 111F which the plaintiffs urge acutely fails the common sense test. Officers on "injured on duty leave" can scarcely take time off from work for vacation or sick time, since they need not report for work in the first place. Compare *Phaneuf* v. *Plattsburgh*, 84 Misc. 2d 70 (Sup. Ct. 1974), aff'd, 50 A.D.2d 614 (N.Y. 1975); *Chalachan* v. *Binghamton*, 55 N.Y.2d 989, 990 (1982). While the Legislature intended fair compensation of injured officers under § 111F, it did not intend that employees receive double benefits or be granted a windfall. *Hennessey* v. *Bridgewater*, 388 Mass. 219, 226 (1983). Prior decisions interpreting § 111F have assumed that "without loss of pay" means without loss of weekly earnings. See *Yates* v. *Salem*, 342 Mass. 460, 462 (1961) (plaintiffs entitled to *wages* for period of disability); *Pearson* v. *Winchester*, 353 Mass. 532, 533-534 (1968) (recovery of *wages* under § 111F); *Jones* v. *Wayland*, 380 Mass. 110, 119 (1980) (sum recoverable under § 111F may amount to a full *weekly pay check* for regular officer); *Hennessey* v. *Bridgewater*, *supra* at 226 (payment of *wages* pursuant to § 111F); *Foley* v. *Kibrick*, 12 Mass. App. Ct. 382, 388 (1981) (payment of *wages* under § 111F); and *Politano* v. *Selectmen of Nahant*, 12 Mass. App. Ct. 738, 739 (1981) (describes § 111F claims as *salary continuation benefits*).

We conclude that an officer on injury leave who draws pay under § 111F does not accumulate vacation pay and sick pay during the period he is off active duty. Implicit in that conclusion is that sick pay and vacation pay accrue for days on the job, so that the employee may be off the job without loss of pay.

We have not overlooked, nor did the trial judge, that under G. L. c. 150E, § 7(*d*)(*e*), as appearing in St. 1978, c. 478, § 77, public employees and public employers may, by collective bargaining agreement, come to terms at variance with G. L. c. 41, § 111F. See *Foley* v. *Northbridge*, 14 Mass. App. Ct. at 532. Although the plaintiffs rest on their contracts to claim accruals of vacation pay and sick pay to which they are entitled under § 111F, in neither their

complaints nor in their brief on appeal have the plaintiffs urged that the collective bargaining agreements contain provisions which override the statute; they have relied wholly on their construction of § 111F. Parenthetically we observe that the provisions in the collective bargaining agreements (there are two agreements, one for a fiscal year ending June 30, 1978, and the other for a fiscal year ending June 30, 1979) do not explicitly expand the benefits provided by § 111F. We would be unwilling to construe a collective bargaining agreement as one overriding statutory provisions in the absence of clear language expressing that intent. See *Chalachan* v. *Binghamton*, 55 N.Y.2d at 990. Article X of the agreements, relating to vacation pay, contains no language even arguably helpful to the plaintiffs. Article XVII, relating to sick leave, provides that "[s]ick leave shall accumulate while an employee is in full pay status." Whatever the phrase may mean, it is less explicit than § 3 of art. XIII, which provides for leave of absence for members of the union's bargaining committee during sessions of collective bargaining "without loss of pay or benefits," or § 3 of art. XVIII, relating to bereavement leave, which provides that "[bereavement l]eave without loss of pay, under this Article shall not be deducted from sick leave or vacation leave . . . ." .

The judgments are reversed, and new judgments shall be entered declaring that the plaintiffs did not accrue vacation days and sick leave days while they were on injured leave, and that the town had no liability for vacation days and sick days for those periods upon the plaintiffs' retirement.

*So ordered.*