TOWN OF DUXBURY vs. DUXBURY PERMANENT FIREFIGHTERS
ASSOCIATION, LOCAL 2167.

No. 98-P-253.

Plymouth. February 10, 2000. - November 10, 2000.

Present: JACOBS, RAPOZA, & GELINAS, JJ.

*Fire Fighter,* Incapacity. *Public Employment,* Sick leave benefits, Vacation
pay. *Public Policy. Arbitration,* Collective bargaining, Judicial review,
Award, Scope of arbitration.

In an action seeking review of an arbitration award, a judge of the Superior
Court incorrectly vacated an arbitrator's award, where the arbitrator's
determination, that a permitted past practice under the applicable collective
bargaining agreement entitled a firefighter to be credited for all vacation
and sick leave accrued while the firefighter was on injured-on-duty leave,
was neither in excess of the arbitrator's authority nor in violation of public
policy. [464-467]

CIVIL ACTION commenced in the Superior Court Department on
December 7, 1995.

The case was heard by *Patrick F. Brady,* J., on motions for
summary judgment.

The case was submitted on briefs.

*Howard B. Lenow & Sheilah F. McCarthy* for the defendant.

*Robert W. Garrett* for the plaintiff.

GELINAS, J. Duxbury Permanent Firefighters Association, Lo-
cal 2167 (association), on behalf of its member, David Thomas,
a town of Duxbury (town) permanent firefighter, appeals from a
judgment of the Superior Court granting the town's motion for
summary judgment.[1] The judgment vacated a November 6,
1995, arbitration award in favor of Thomas. The arbitrator had
awarded Thomas credit for all vacation and sick leave that he
had accrued while he was on injured-on-duty (IOD) leave,

---

[1]The association's cross motion for summary judgment was denied.

pursuant to G. L. c. 41, § 111F.[2] The association contends that the arbitrator's finding of the town's past practice of giving such benefits to other firefighters was sufficient to support his award. We agree.

The material facts are not in dispute. The town has employed Thomas as a firefighter since April 17, 1967. The town and the association were parties to a collective bargaining agreement (CBA), effective from July 1, 1992, through June 30, 1995. The CBA established the wages, hours, terms, and conditions of employment of certain employees of the town's fire department, including Thomas. The CBA is silent on the issue whether employees on IOD status are eligible to accrue vacation benefits and thus eligible to be paid for accrued and unused vacation time.

On May 19, 1993, Thomas was injured while on duty. On May 20, 1993, the town placed him on IOD status, and Thomas began a leave, without loss of pay, pursuant to G. L. c. 41, § 111F. He remained on IOD status at least through the date of the arbitration hearing.

For the period that Thomas was on IOD leave, the town neither credited him with, nor paid him for, vacation time or sick leave. On July 11, 1994, Thomas grieved the issue according to the provisions of the CBA. The town denied the grievance. Thomas and the union, again according to the CBA, moved for arbitration.

The arbitrator concluded that the town had violated the CBA in refusing to permit the accrual of vacation and sick leave while Thomas was on IOD leave, and awarded Thomas credit for all withheld vacation and sick leave accrued while he was on IOD status; the award further ordered that Thomas be paid for the accruals. The town appealed to the Superior Court pursuant to G. L. c. 150C, § 11(a). The Superior Court entered judgment on July 16, 1997, vacating the arbitrator's award.

Evidence before the arbitrator showed that sixteen firefighters had been granted a total of fifty-three IOD leaves between June, 1983, and the date of the arbitration hearing. At the hearing, the town and the association stipulated that, with the exception of Thomas, all sixteen firefighters continued to accrue and be paid

---

[2]The arbitrator did, however, concur with the town with respect to the question of sick leave incentive pay, and reasoned that the town did not violate the collective bargaining agreement when it refused to pay Thomas incentive pay while he was on IOD leave. That issue is not before us.

for vacation and sick leave during all fifty-three IOD leaves. Of the fifty-three IOD leaves, only six, including Thomas's, extended for approximately two months or more. On this evidence the arbitrator concluded that there was a significant past practice of allowing a firefighter on IOD leave to accrue and be paid for vacation and sick leave. The parties further stipulated, and the arbitrator concluded, that the parties had never bargained the accrual of sick leave or vacation time for firefighters on IOD leave.

*Discussion.* The town first contends, and the Superior Court found, that our decision in *Rein* v. *Marshfield*, 16 Mass. App. Ct. 519 (1983), prevents Thomas from accruing or being paid for the benefits claimed. *Rein* was consolidated at trial with a like claim of another Marshfield police officer; the two police officers retired after having been out on IOD leave. Marshfield did not permit them to accrue vacation or sick time during the period of their IOD leave; under their collective bargaining agreement these benefits would have been available to them had they been on active duty, but the contract was silent as to whether individuals on IOD leave were entitled to these benefits. The officers sought declaratory relief in the Superior Court, pursuant to G. L. c. 231A, § 1, claiming that the language in G. L. c. 41, § 111F, that they should suffer no "loss of pay" while on IOD leave, entitled them to these benefits. This court held that the statutory language, "leave without loss of pay," did not include the claimed benefits. *Rein, supra* at 523. Recognizing that such benefits might be available in certain circumstances, we went on to say, in dicta: "Parenthetically we observe that the provisions in the collective bargaining agreements . . . do not explicitly expand the benefits provided by [the statute]. We would be unwilling to construe a collective bargaining agreement as one overriding statutory provisions in the absence of clear language expressing that intent." *Id.* at 524. It is this language, the town contends, that, when read in conjunction with the association's stipulation that payment of these benefits to employees on IOD status had not been the subject of collective bargaining and was not specifically mentioned in the contract, precludes payment.

In further support of the argument, the town relies on *Willis* v. *Board of Selectmen of Easton*, 405 Mass. 159, 164-165 (1989), where the Supreme Judicial Court stated: "We are reluctant to construe a collective bargaining agreement as one

which overrides statutory provisions absent clear language expressing that intent." Were this an action for declaratory judgment, we would be inclined to agree, as the CBA is silent with regard to these accrued times and payments. Because the matter reaches us through the arbitration process, however, we conclude to the contrary.

There is a "strong public policy favoring arbitration." *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93,* 420 Mass. 13, 16 (1985), quoting from *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.,* 407 Mass. 1006, 1007 (1990). "Arbitrators have broad discretion in interpreting collective bargaining agreements and in providing complete relief to an aggrieved party." *Leahy* v. *Local 1526, Am. Fedn. of State, County & Mun. Employees,* 399 Mass. 341, 353 (1987). "The role of courts in reviewing an arbitrator's award is limited." *Bureau of Special Investigations* v. *Coalition of Pub. Safety,* 430 Mass. 601, 603 (2000), quoting from *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 187 (1984), and citing G. L. c. 150C, § 11. As the Supreme Judicial Court has said, "[w]e do not, and cannot, pass on an arbitrator's alleged errors of law and, absent fraud, we have no business overruling an arbitrator because we give a contract a different interpretation." *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93,* 420 Mass. at 15, quoting from *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. at 187. An arbitrator's award may not be vacated except for reasons set forth in G. L. c. 150C, § 11. See *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93,* 420 Mass. at 15. Section § 11(*a*) specifically provides that, "[u]pon application of a party, the superior court shall vacate an award if . . . the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law." Viewed in this context, we look only to determine if the arbitrator here exceeded his scope of reference, acted against clearly defined public policy, or ordered conduct prohibited by State or Federal law. We conclude that he did none of the above.

We defer to the arbitrator's determination that there was a clear past practice of crediting similarly situated individuals on IOD leave with vacation and sick time. An arbitrator is governed

first by the collective bargaining agreement. Alternatively, in instances where the provisions of an agreement are not clear and unequivocal, the arbitrator may rightly look to past practice to resolve ambiguities. The arbitrator in the present case properly resorted to past practice when he could not conclude that the collective bargaining agreement was clear and unequivocal concerning the provision of accrual of vacation and sick time to firefighters pursuant to G. L. c. 41, § 111F, leave. See *Chief Administrative Justice of the Trial Ct.* v. *Service Employees Intl. Union, Local 254*, 383 Mass. 791, 792-793 (1981) (past practice, clearly stated and understood, maintained over a reasonable time, and accepted by both parties, could not be terminated unilaterally). Here, the parties jointly negotiated their collective bargaining agreement. In agreeing to arbitration, they agreed to be bound by the arbitrator's interpretation of that agreement. See G. L. c. 150C, §§ 1, 11; *Cape Cod Gas Co.* v. *United Steelworkers of America, Local 13507*, 3 Mass. App. Ct. 258, 261 (1975) ("The parties bargained for [the arbitrator's] final interpretation of their collective bargaining agreement. They got what they bargained for"). "The parties received what they agreed to take, the honest judgment of the arbitrator as to matters referred to him." *Morceau* v. *Gould-Natl. Batteries, Inc.*, 344 Mass. 120, 124 (1962). The CBA contains no provision precluding payment of vacation and sick time to individuals on IOD leave, although the parties might well have bargained for such a provision.

The town next contends that the arbitrator exceeded his authority by violating a well-defined and dominant public policy against "windfall" payments to individuals, as a result of erroneous actions by municipal officials in making the payments in the first instances. See *Hennessey* v. *Bridgewater*, 388 Mass. 219, 226 (1983); *Rein*, 16 Mass. App. Ct. at 523. The policy arises from a need to protect the public treasury from unwarranted money payments. Specifically, the town argues that the arbitrator wrongfully relied on minor instances of public officials' prior noncompliance with G. L. c. 41, § 111F. We reject the argument. The statute establishes the base payment required of the town, and that base does not include the claimed benefits. Nothing in G. L. c. 41, § 111F, precludes payment of the challenged benefits. Any payments made thus could not result in "noncompliance" with the statute. The arbitrator recognized

that certain other provisions of the contract[3] created sufficient ambiguity as to accruals and payments while on IOD status to permit recourse to past practice. Any such ambiguity in the contract would support a determination that the town's practice of making such payments was appropriate, especially as the practice began prior to the decision in *Rein.*

An arbitrator's award may be set aside where it violates a well-defined, dominant public policy. That policy must be gleaned "by reference to the laws and legal precedents and not from general considerations of supposed public interests." *W.R. Grace & Co.* v. *Local Union 759, Intl. Union of the United Rubber, Cork, Linoleum & Plastic Workers of America,* 461 U.S. 757, 766 (1983), quoting from *Muschany* v. *United States,* 324 U.S. 49, 66 (1945). In Massachusetts, the law is the same. See *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93,* 420 Mass. at 16. When there is a conflict between the provisions of G. L. c. 41, § 111F, and a collective bargaining agreement, the latter shall prevail. G. L. c. 150E, § 7(*d*)(*e*). Whether that conflict arises because of clear language in the agreement, or as a result of an arbitrator's interpretation of the contract, is of no consequence.

The town argues, finally, that the arbitrator ignored the parties' express agreement that vacation time would not be cumulative from year to year. This argument fails for two reasons. First, the arbitrator's interpretation of the contract in this regard, even if erroneous, is not subject to review. See *Leahy* v. *Local 1526, Am. Fedn. of State, County, & Mun. Employees,* 399 Mass. at 355; *Massachusetts Hy. Dept.* v. *American Fedn. of State, County & Mun. Employees, Council 93, supra* at 15. It is not within our purview to determine how the arbitrator reached his result, or whether he ignored certain aspects of the agreement. "Whether the arbitrator exceeded the scope of his powers is an issue always open for review . . . but that review is confined to the award itself because, in the absence of fraud, the manner in which the arbitrator reached the decision is of no relevance." *School Comm. of Holyoke* v. *Deprey,* 8 Mass. App.

---

[3]Article VIII of the CBA conditioned accrual of vacation time on an employee's status as a "regular full time employee covered by this agreement." Article IX provided that "all regular full time employees covered by this agreement shall be eligible to receive time off with pay in the event of a bona fide personal sickness and non-service connected injury." Article IX further provides for incentive pay if an employee "refrains from using all or part of his . . . sick leave eligibility accrued during [one] fiscal year."

Ct. 58, 62 (1979). Secondly, the finding of a substantial past practice of ignoring this aspect of the contract gives ample support to the arbitrator's finding in this regard.

The judgment of the Superior Court is vacated, and a new judgment shall enter affirming the arbitrator's award.

*So ordered.*