CITY OF WORCESTER *vs.* FREDERICK J. BORGHESI & others.[1]

Worcester.  January 16, 1985. — April 22, 1985.

Present: KASS, SMITH, & WARNER, JJ.

*Arbitration,* Judicial review.  *Police,* Incapacity, Discharge.

A police officer's claim for paid leave authorized by G. L. c. 41, § 111F, was arbitrable under provisions of the applicable collective bargaining agreement notwithstanding the officer's suspension and later dismissal as the result of criminal proceedings against him, and an arbitrator did not exceed his powers in ordering that the officer be paid his wages up to the time of his suspension. [663-664]

Alleged errors of law or fact by the arbitrator considering a grievance under a collective bargaining agreement, even though couched in terms of the arbitrator's having exceeded his powers, were not subject to examination on judicial review of the arbitrator's decision. [664-665]

CIVIL ACTION commenced in the Superior Court Department on February 6, 1984.

The case was heard by *Gerald F. O'Neill, Jr.,* J.

*Peter A. Campagna,* Assistant City Solicitor, for the plaintiff.

*Richard K. Sullivan* for the defendants.

SMITH, J.   The defendant Frederick J. Borghesi was appointed in January, 1974, as a permanent full-time police officer in the city of Worcester (city). On October 13, 1978, he became incapacitated for duty because of an injury sustained in the performance of his duty, without fault of his own, and hence was granted leave without loss of pay under G. L. c. 41, § 111F. His medical status was monitored periodically by Dr. Robert Anderson, the physician designated by the city pursuant to § 111F. On or about June 20, 1980, Dr. Anderson deter-

---

[1] International Brotherhood of Police Officers and Raymond F. McGrath, the president of Local 378, International Brotherhood of Police Officers.

mined that Borghesi could return to his previous duties, and he was ordered back to work by the chief of police. Borghesi refused to return to work and filed a grievance in August, 1980, claiming that he was still incapacitated and contesting his removal from "leave without loss of pay" status.[2] His grievance was denied, and the matter went to arbitration.[3]

On November 24, 1981, prior to the arbitration hearing, Borghesi was suspended without pay because of the return of indictments against him. See G. L. c. 268A, § 25, inserted by St. 1972, c. 257. He was convicted of several crimes and was dismissed from the police department on March 21, 1983. The arbitration hearing commenced on April 28, 1983. At the outset, the city filed a motion to dismiss the arbitration on the ground that the matter was no longer arbitrable in view of Borghesi's suspension and subsequent termination. The arbitrator denied the motion.

The hearing proceeded on the issue stipulated by the parties, namely, whether the city had violated art. 29 of the collective bargaining agreement or G. L. c. 41, § 111F, by refusing to grant Borghesi leave without loss of pay for a period prior to November 24, 1981, the date of his suspension. After hearing testimony and receiving documentary evidence, the arbitrator ruled that Borghesi was still incapacitated at the time he was removed from "leave without loss of pay" status. He ordered the city to pay Borghesi wages for a period prior to the date of

---

[2] The record is not clear as to the exact date that Borghesi was removed from "leave without loss of pay" status. It appears that he was given vacation pay for the period June 19, 1980, through December 7, 1980; then placed back in "leave without loss of pay" status through February 21, 1981; then given vacation leave through April 17, 1981; went back on paid sick leave through May 1, 1981; then placed on sick leave without pay through May 8, 1981. From that date until November 24, 1981, Borghesi was carried in a "no pay" status.

[3] The city and the International Brotherhood of Police Officers (union) were parties to a collective bargaining agreement which included an article that provided for final and binding arbitration for disputes concerning "the interpretation, application or enforcement of the terms of [the collective bargaining agreement]."

his suspension.[4] The city brought an application in the Superior Court seeking to have the award vacated. G. L. c. 150C, § 11. A judge denied the application and confirmed the award. On appeal, the city claims that the arbitrator exceeded his powers. In addition, the city claims that the arbitrator denied the city the right to cross-examine witnesses and allowed hearsay evidence to be employed during the hearing. We affirm.

At the outset of our analysis we note that the city in its arguments on appeal ignores the limited scope of judicial review of an arbitrator's award. Under G. L. c. 150C, § 11, "[i]n the absence of fraud, arbitrary conduct, or procedural irregularity in the hearings, the court's determination is confined largely to whether the arbitrator's award conforms to the terms of the reference submitted to him by the parties." *Greene* v. *Mari & Sons Flooring,* 362 Mass. 560, 563 (1972). Here, the city and the union agreed on an issue and submitted it to the arbitrator. His decision addressed the question and answered it. The award was within the scope of the reference.

The city has come up with a novel twist to its argument that the arbitrator exceeded his powers. It concedes that the dispute submitted to the arbitrator was a grievance as that word is defined in the collective bargaining agreement. It contends, however, that Borghesi's criminal conduct rendered the grievance no longer subject to arbitration because by that conduct Borghesi forfeited any compensation that may be owed to him. It cites *Hennessey* v. *Bridgewater,* 388 Mass. 219 (1983), as support for its position. In that case, a probationary, nontenured police officer was injured in the line of duty and received leave without loss of pay pursuant to G. L. c. 41, § 111F. While on that status his employment was terminated for breach of duty and illegal conduct. See now G. L. c. 31, § 61. On the same date the town terminated all compensation that the police

---

[4] The arbitrator's award was limited to compensation for wages lost during the period from the date that Borghesi's benefits under G. L. c. 41, § 111F, were terminated to November 24, 1981, the date of his suspension. He specifically excluded sick leave pay and vacation leave pay from the award. See *Rein* v. *Marshfield,* 16 Mass. App. Ct. 519, 522 (1983); *Brown* v. *Taunton,* 16 Mass. App. Ct. 614, 620 (1983).

officer had been receiving under G. L. c. 41, § 111F. He brought an action seeking a declaration of his right under G. L. c. 41, § 111F, to receive benefits after the date of his termination. The court held that "where the unchallenged reasons for termination charge illegal conduct as well as breach of duty . . . [the police officer] has forfeited any claim to the continuation of wages which are incident to employment." *Id.* at 226.

Contrary to the city's contention, *Hennessey* v. *Bridgewater, supra,* does not control the situation here. In contrast to the plaintiff in the *Hennessey* decision, Borghesi does not claim that he is owed wages from the date of his suspension. Rather, he seeks pay under G. L. c. 41, § 111F, for a period of time *prior* to his suspension. Therefore, there is nothing in that decision that either forbids arbitration of the grievance or holds that Borghesi, under the facts presented here, has forfeited any claim to wages owed to him before his suspension.

The city's argument that analogous provisions of G. L. c. 32, and provisions of G. L. c. 268A require forfeiture of any claim for wages prior to November 24, 1981, is without merit.

The city's next argument in regard to its contention that the arbitrator exceeded his powers is equally without merit. General Laws c. 41, § 111F, states that "no . . . leave [without loss of pay] shall be granted . . . for any period after a [designated] physician . . . determines that such incapacity no longer exists." Here, Dr. Anderson, the designated physician, determined that Borghesi could return to work. The arbitrator ruled that Borghesi was still incapacitated within the meaning of G. L. c. 41, § 111F, when he was removed from leave without loss of pay status. The city argues that the arbitrator's decision was error because the statute vests in the designated physician, and not the arbitrator, the determination when an injured police officer has recovered from his incapacity. In his decision the arbitrator agreed with the city's interpretation of G. L. c. 41, § 111F, but ruled that the determination of the designated physician here was seriously flawed in several aspects.

The city, in effect, claims that the arbitrator misinterpreted either the evidence before him or the law. Because we are concerned here, as was the Superior Court judge, with judicial

review of an arbitrator's decision, it is not necessary for us to determine the worth of the city's contention. While couched in terms that the arbitrator exceeded his powers, the city's objection is in fact a "contention[ ] that he committed a variety of errors of law and fact." *Triton Regional Dist. Sch. Comm.* v. *Triton Teachers Assn.,* 7 Mass. App. Ct. 873, 874 (1979). It is well settled that, in the absence of fraud, an arbitrator's decision is binding even if he has committed an error of law or fact in arriving at his decision. *Morceau* v. *Gould-Natl. Batteries, Inc.,* 344 Mass. 120, 124 (1962). *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Authy.,* 363 Mass. 386, 390 (1973). Therefore, the matters raised by the city are not subject to review by us.

The city's claim that the arbitrator conducted the hearing in violation of G. L. c. 150C, § 5(*b*), borders on the frivolous. Pursuant to the collective bargaining agreement, the hearing was conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association and not pursuant to the statute.[5] Those rules specifically state that the conformity to legal rules of evidence is not necessary. In addition, "[o]ur function does not include ruling on the appropriateness of the arbitrator's admission of and reliance on particular evidence." *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester,* 392 Mass. 184, 188 n.4 (1984).

*Judgment affirmed.*

---

[5] General Laws c. 150C, § 5, provides at the outset as follows: "Unless otherwise provided by the agreement. . . ." In this case the parties have "otherwise provided by the agreement."