Rup, Mary-Lou, J.
This dispute between the plaintiff, Edwin Guzman (“Guzman”) and Town of Framing-ham (“the Town”) arose when the Town denied Guzman’s request for Career Incentive Pay pursuant to G.L.c. 41, §108L, the so-called “Quinn Bill” (“Quinn benefits”). Guzman filed suit seeking declaratory relief as to whether chapter 120, section 49 of the Acts of 2009 (“Chapter 120”) disqualifies him from receiving Quinn benefits. The Town moves to dismiss pursuant to Mass.R.Civ.P. 12(b)(6). For the reasons that follow, the Town’s motion shall be ALLOWED, and a declaration will enter as set forth in the Order below.
BACKGROUND
I. The Quinn Bill
Chapter 41, Section 108L of the General Laws of Massachusetts established a career incentive program for police officers by providing salary increases as a reward for officers who further their education. Rooney v. Town of Yarmouth, 410 Mass. 485, 487 (1991). Municipalities accepting the provisions of section 108L are entitled to reimbursement from the Commonwealth for a specified portion of the costs of the incentive benefits. G.L.c. 41, §108L. The State Board of Regents (“Board”) is responsible for maintaining a list of approved courses and for certifying the amount of state reimbursements to participating cities and towns. See Rooney, 410 Mass, at 487.
II. St. 2009, c. 120, §49 (Chapter 120)
In 2009, the Legislature made appropriations for the 2010 fiscal year for reimbursements to cities and towns participating in the Quinn Bill program. See St. 2009, c. 27, §2 (item 8000-0040), as amended by St. 2009, c. 120, §49. When doing so, the Legislature limited eligibilify for Quinn benefits based on an officer’s hiring date. The limitation reads as follows:
. .. [R]egular full-time members of municipal police departments hired on or after July 1, 2009 shall not be eligible to participate in the career incentive pay program established pursuant to section 108L of chapter 41 of the General Laws . . .
*90 St. 2009, c. 120, §49.
III. The Collective Bargaining Agreement
The Town and the Framingham Police Officers Union (“FPOU”) are parties to a collective bargaining agreement (“CBA”) that was updated in a 2010 Memorandum of Agreement (“MOA”). The MOA reflects the 2009 statutory conditions placed upon Quinn benefit eligibility.
Paragraph 2, Section 1 of the MOA provides that the Town will pay “existing qualified” police officers the amounts specified under the Quinn Bill, regardless of whether the Town receives reimbursement from the State. In Section 2, the Town agrees “independent of Chapter 41, Section 108L” to provide education benefits to officers not entitled to Quinn Bill benefits “solely because of the officer’s date of hire,” in the amounts of $4,500 per year for a Bachelor’s Degree and $7,000 for a Masters or Law Degree. The other measures of eligibility, including whether an educational program meets proper standards and requirements, continue to be governed by the qualifications set forth in the Quinn Bill. In effect, this second form of career incentive compensation contractually extends a reduced career incentive benefit to officers who would be eligible for Quinn benefits but are barred under the hiring date restriction in Chapter 120.[1]
The CBA has a mandatory grievance system through which officers must resolve all “grievances” related to their employment. A “grievance” is defined as “any dispute arising out of the interpretation, application, violation, or meaning of this Agreement, but shall not include any matter as to which an employee shall have the right of appeal or review under Civil Service Laws.” The CBA requires that “any grievance” first be submitted to an employee’s supervisor. The grievance can then be submitted to the Chief of Police, then the Town Manager, and then it “shall be submitted to arbitration.” The decision of the arbitrator shall be final and binding on all parties.
IV. The Parties’ Dispute
On September 8, 2008, Guzman was hired as a regular full-time member of the Worcester Police Department (“Worcester”). At that time, Guzman had a bachelor’s of science degree in criminal justice, and had begun taking courses toward a graduate degree. On February 26, 2009, after Guzman completed his police academy training, Worcester laid him off effective retroactively to January 27, 2009. Lack of funding was the reason for the lay-off. On March 12, 2009, Guzman was placed on the “Police Officer Reemployment List” (“Reemployment List”), a reemployment list for permanent employees who are separated from their positions due to lack of funding. See G.L.c. 31, §40.
On January 4, 2010, the Town of Framingham selected Guzman’s name from the Reemployment List, and appointed him as a police officer. Since that date, the Town has denied Guzman’s repeated requests for full Quinn benefits citing the fact that the City of Worcester had previously determined that he was ineligible based on his date of hire and the effect of Chapter 120.
In the instant suit, Guzman seeks relief in the form of a declaration of his rights concerning the applicability of Chapter 120. The Town has moved to dismiss his lawsuit on the grounds that Guzman was required to arbitrate this dispute because it constituted a “grievance” under the terms of the CBA and, in the alternative, that Guzman has failed to join all necessary parties to the lawsuit.
DISCUSSION
I. Standard of Review
In considering a motion to dismiss for failure to state a claim upon which relief can be granted, the court accepts the allegations of the complaint as true, and draws all reasonable inferences therefrom in favor of the plaintiff. See Eyal v. Helen Broad. Corp., 411 Mass. 426, 429 (1991). While factual allegations in the complaint need not be detailed, they “must be enough to raise a right to relief above the speculative level...” Iannacchino v. Ford Motor Co., 451, Mass. 623, 636 (2008). The complaint must set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . ."Id., quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007).
A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. See Harvard Crimson, Inc. v. President and Fellows of Harvard Coll., 445 Mass. 745, 748 (2006). In the instant case, the Town has attached several exhibits to its motion to dismiss. Normally, “[i]f ... matters outside the pleadings are presented to and not excluded by the court, [a motion under Rule 12(b)(6)] shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.” Mass.R.Civ.P. 12(b)(6). However, “courts have made narrow exceptions for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs claim;, or for documents sufficiently referred to in the complaint.” Watterson v. Page, 987 F.2d 1, 3 (1st. Cir. 1993).
Conversion of the motion into one for summary judgment is unnecessary under the circumstances presented in the instant case. From the Town’s’ supplemental materials, the court need only consider the terms of the CBA and the MOA. These agreements are integral to Guzman’s employment relationship with the Town, and he does not contest the authenticity of the agreements or his membership in the FPOU. See Watterson, 987 F.2d at 3; see also Walsh v. Town of Randolph, 2005 Mass.App.Div. 85, 2005 WL 1792118 at *6 (Mass.App.Div. 2005) (holding that defendant’s motion to dismiss need not be converted into one for summary judgment even though defendant attached *91 a copy of the governing collective bargaining agreement to its motion). Further, both parties have fully briefed the issue of whether Guzman was required to submit this dispute to arbitration under the terms of the CBA and they discussed this issue at length during the hearing on the Town’s motion. Therefore, based on the allegations set forth in the complaint and the terms of the CBA and MOA, I address only the narrow and purely legal question of whether Guzman’s claim should be dismissed because it was subject to the grievance procedure set forth in the CBA.[2]
II. Guzman’s Failure to Exhaust the Grievance Procedure
“In general, arbitrators authorized by collective bargaining agreements to preside over employee grievances do not possess unrestricted power to mediate . labor disputes.” Rooney, 410 Mass, at 490. An employee need not submit to arbitration disputes over independent substantive, personal, nonwaivable statutory guarantees. Id. at 490-91 (citation omitted). Likewise, employees need not submit to arbitration disputes based on independent statutoiy rights that are not addressed and encompassed by the collective bargaining agreement. Id. at 491 (citation omitted).
Guzman contends that Chapter 120 is not encompassed in the CBA and, as a consequence, he can ask the court for an interpretation and application of its relevant provisions. Guzman is mistaken. Though he is permitted to seek judicial enforcement of statutory rights not incorporated in the CBA, Chapter 120 does not provide a statutoiy right that would be available for judicial interpretation and enforcement. Chapter 120 merely imposes a condition on existing Quinn Bill rights. Despite the manner in which Guzman has framed his dispute, he ultimately seeks a determination of his eligibility for Quinn benefits, and as he concedes, his right to Quinn benefits was unequivocally encompassed and addressed by the language of the MOA. The Quinn Bill does not vest in an individual “a personal, substantive, nonwaivable statutoiy guarantee” that Guzman would be permitted to enforce judicially even where Section 108L is incorporated into the CBA. See Rooney, 410 Mass, at 492.
Furthermore, Guzman’s premise that Chapter 120 is not incorporated into the MOA is also incorrect. Paragraph 2, Section 2 of the MOA states that the Town will provide certain compensation to those officers “who are not entitled to benefits pursuant to G.L.c. 41, §108L, solely because of the officer’s date of hire ...” Thus, under the language of the MOA, Guzman’s eligibility for career incentive compensation is contingent on a determination of whether he is ineligible for Quinn benefits based on his hiring date. Though this portion of the MOA may not explicitly refer to Chapter 120, it nevertheless encompasses the same question that Guzman now asks the court to decide, namely, whether the “hiring date” restriction imposed in Chapter 120 applies to him.[3] This question, though not representative of an independent statutoiy right, remains subject to the grievance procedure included in the MOA.
It is true that a court should be “reluctant to construe a collective bargaining agreement as one which overrides statutoiy provisions absent clear language expressing that intent.” See Willis v. Board of Selectmen of Easton, 405 Mass. 159, 164-65 (1989). In this case, however, the CBA does not override any of Guzman’s statutoiy rights; instead, the Town’s contractual duty to provide career incentive benefits is premised upon a straightforward application of the Quinn Bill together with the condition placed upon eligibility in Chapter 120. As a result, any questions regarding application of G.L.c. 41, §108Land Chapter 120 are subject to the grievance procedure in the CBA because they constituted a dispute arising out of the interpretation and application of the CBA.[4] Where the FPOU and the Town have contractually agreed to resolve any disputes of this nature through arbitration, the court does not determine the parties’ rights and responsibilities under G.L.c. 41, §108L and St. 2009, c. 120, §49.[5]
ORDER
For the foregoing reasons, it is hereby ordered that the Town’s motion to dismiss is ALLOWED. It is further DECLARED that Guzman’s claim for Quinn benefits, including a determination of the applicability of St. 2009, c. 120, §49, is subject to the grievance procedure outlined in the collective bargaining agreement and memorandum of agreement between the Town of Framingham and the Framingham Police Officer’s Union.

Section 2, Paragraph 4 of the MOA also provides the following:
The Town may, in its sole discretion, as a contractual commitment, provide Quinn or Educational Incentive Benefits to Patrol officers hired by the Town from another agency through lateral transfer or from a layoff list, who were eligible for benefits under G.L.c. 41, §108L in the municipality in which they formerly were employed.

As a consequence, Guzman’s complaint is subjected to the less demanding scrutiny associated with motions to dismiss. Beddall v. State Street Bank andTrust Co., 137F.3d 12, 17 (1st. Cir. 1998).

There is no language in G.L.c. 41, §108L, making eligibility for Quinn benefits contingent on an officer’s date of hire. Such a condition is only found in Chapter 120.

It bears noting that Guzman appears to have received a less-than-thorough explanation for the Town’s decision to deny him Quinn benefits. That said, it is likely that he would have received a more comprehensive determination of his rights had he sought a resolution of his grievance through arbitration.

It is unnecessary to reach the Town’s other basis for dismissal: failure to join all necessary parties, specifically Worcester and the Board of Regents.